63 P.3d 134 (2003)
115 Wash.App. 452
Durmont ANDERSON, Helen Burcalow, Rick Cady, Cameron Wheelock, Andrew Stephens and Jim Fowler, Appellants,
v.
STATE of Washington, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
No. 28449-9-II.
Court of Appeals of Washington, Division 2.
February 7, 2003.
Lewis Lynn Ellsworth, Gordon Thomas Honeywell, John Richard Creatura, Tacoma, for Appellant.
Stewart Arthur Johnston, Atty General Ofc L&p Div, Olympia, for Respondent.
BRIDGEWATER, J.
Durmont Anderson and other named plaintiffs appeal summary judgment dismissal of their class action lawsuit against the Department of Social and Health Services (DSHS). The purported class consists of approximately 165 DSHS employees who work at the Special Commitment Center (SCC) on McNeil Island. Plaintiffs sued DSHS to recover overtime compensation under the Minimum Wage Act (MWA), chapter 49.46 RCW, for time spent traveling by ferry to and from McNeil Island. We affirm.
The SCC, a secure, total confinement facility located on the grounds of the McNeil Island Corrections Center (MICC), houses sexually violent predators committed to DSHS's custody for treatment. DSHS operates the SCC, while the Department of Corrections (DOC) operates the MICC.
Plaintiffs must commute to and from McNeil Island by riding a DOC ferry boat from Steilacoom. Every day, there are 19 scheduled ferry runs between Steilacoom and McNeil Island. Plaintiffs' work shifts must conform to the DOC ferry schedule. The ferry passage takes approximately 20 minutes each way. During passage, plaintiffs *135 engage in various personal activities, such as reading, conversing, knitting, playing cards, playing hand-held video games, listening to CD players and radios, and napping. They perform no work during the passage, but they assert that they are subject to discipline.
Plaintiffs sued DSHS in January 2001 and obtained class certification in November 2001. In the fall of 2001, the parties filed cross motions for summary judgment. The superior court denied plaintiffs' motion and granted DSHS's.

I. Standard of Review
We review summary judgment de novo,[1] viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.[2] Summary judgment is appropriate only if there is no issue of material fact and the moving party is entitled to judgment as a matter of law.[3] When the moving party meets his initial burden of showing the absence of an issue of material fact, the burden shifts to the nonmoving party to show the existence of an element essential to that party's case.[4]

II. Minimum Wage Act
At issue in this case is the interpretation of the MWA's overtime provision, which reads in relevant part: "Except as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives [overtime] compensation[.]"[5] The term "`employ' includes to permit to work[.]"[6]
In 1975, the Legislature amended the MWA to conform state law to the federal Fair Labor Standards Act of 1938 (FLSA).[7] The wording of the MWA's overtime provision is similar to its FLSA counterpart.[8] Courts may look to federal law on this subject as persuasive authority.[9] In our analysis, we examine the statute and the WAC provisions pertaining to this issue and the case authority under the federal law.
A. STATUTORY SCHEME
Under RCW 43.22.270(4), the director of labor and industries has the power and duty:
To, with the assistance of the supervisor of employment standards, supervise the administration and enforcement of all laws respecting the employment and relating to the health, sanitary conditions, surroundings, hours of labor, and wages of employees employed in business and industry in accordance with the provisions of [the Industrial Welfare Act,] chapter 49.12 RCW[.][10]
WAC 296-126-002(8), adopted under the authority of chapter 49.12 RCW,[11] provides that: "`Hours worked' shall be considered to mean all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place."[12] Plaintiffs are not "on duty" on the SCC's premises during their commute, nor are they at a "prescribed work place." Thus, under WAC 296-126-002(8), they are not entitled to compensation for the commute.
As well, in 1992, the Department of Labor and Industries issued an Interpretive Guideline for WAC 296-120-002(8), explaining *136 when travel time is considered to be compensable working time:
The principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved. An employee who travels from home before the regular work day and returns home at the end of the work day is engaged in ordinary home to work travel. This is true whether the employee works at a fixed location or at different job sites. Normal travel from home to work is not work time and does not require compensation.[13]
Finally, plaintiffs are all classified state civil service employees whose terms and conditions of employment are governed by the state civil service laws and administrative rules.[14] WAC 356-15-040 defines the circumstances in which time spent in travel is considered work time:
Travel time shall be considered as time worked when:
(1) It occurs during the employee's normal hours of work and is from one work site to another; or
(2) The employee has a regularly assigned work site, and the travel is to carry out a work assignment at a different location than the regularly assigned work site, to the extent that it exceeds normal home-to-work travel time, is outside of normal working hours, and does not exceed the shortest reasonable means for the employee to reach and return from the location.[[15]]
Thus, under the statutory scheme and the WAC provisions implementing it, plaintiffs are not entitled to compensation for the commute. Next, we look to federal law.
B. FEDERAL LAW
During the 1940s, the Supreme Court held that the FLSA, under certain conditions, required employers to pay their employees for time spent in transit to the job. See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944); Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am., 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945). In response to these cases, Congress enacted the Portal to Portal Act of 1947, which excluded compensation for travel to and from the actual place where the employee performs the principal activity for which he was hired.[16] The MWA does not include language similar to the Portal to Portal Act.
Plaintiffs argue that the Legislature chose to not integrate the Portal to Portal Act into the MWA; accordingly, they reason that Washington courts are bound to follow pre-portal-to-portal case law. Further, plaintiffs accuse the superior court of importing the Portal to Portal Act into the MWA, contrary to the Legislature's intent to conform state law to the FLSA as it existed before the amendment.
We are not persuaded that the Legislature intended to adopt the Portal to Portal Act; and we do not hold that it was adopted. But that is unnecessary to our analysis.
Even if the Legislature intended that pre-portal-to-portal case law be guidelines, thus allowing Tennessee Coal and Jewell Ridge to apply to the MWA, the employees here do not meet the test prescribed by those cases for commuting on the ferry boat. The issue in both those cases was whether miners should receive compensation for the long, hazardous journey inside the mines.
In Tennessee Coal, the miners arrived at the employer's premises, changed into work clothes, collected equipment and supplies, and reported to a loading platform at the mine's portal.[17] There, the miners had to wait their turn to ride down the shaft in mine cars; the employer prescribed the miners' conduct during the ride and required them to ride rather than walk. While riding the mine cars, the miners had to bend down so that their heads would clear the low mine ceilings; broken bones and bloody heads "often" resulted.[18] *137 After riding several thousand feet into the mine, the miners gathered more equipment and walked up to two miles through tunnels filled with "hidden perils."[19] The Court held that the employer must compensate the miners for travel within the mine because such travel was primarily for the employer's benefit, occurred on the employer's premises, and was necessary for the production of iron.[20]
Jewell Ridge involved a similar issue. The Court held that travel inside coal mines was compensatory employment because it required physical and mental exertion controlled by the employer and necessary to production. Accordingly, an employee was entitled to pay for employment-related travel when (1) the travel required physical or mental exertion; (2) the employer controlled or required the exertion; and (3) the exertion was wholly for the employer's benefit (i.e., pursued necessarily and primarily to benefit the employer and his business).[21]
Anderson and his fellow class members do not meet these requirements. Riding the ferry boat requires no physical or mental exertion and does not occur on the employer's premises. Thus, under either a statutory analysis or an analysis of federal case law, appellants cannot receive compensation for riding the ferry boat to and from McNeil Island.
Affirmed.
We concur: HOUGHTON, P.J., and ARMSTRONG, J.
NOTES
[1] Green v. A.P.C., 136 Wash.2d 87, 94, 960 P.2d 912 (1998).
[2] Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[3] CR 56(c).
[4] Young v. Key Pharm., Inc., 112 Wash.2d 216, 225-26, 770 P.2d 182 (1989).
[5] RCW 49.46.130(1) (emphasis added).
[6] RCW 49.46.010(3).
[7] Inniss v. Tandy Corp., 141 Wash.2d 517, 523, 7 P.3d 807 (2000).
[8] Compare 29 U.S.C. § 207(a)(1) and RCW 49.46.130(1).
[9] Inniss, 141 Wash.2d at 534, 7 P.3d 807.
[10] RCW 43.22.270(4) (emphasis added).
[11] See WAC 296-126-001.
[12] WAC 296-126-002(8) (emphasis added).
[13] CP at 162 (ES-016 at page 5) (emphasis added).
[14] See RCW 41.06; WAC 356.
[15] WAC 356-15-040.
[16] See 29 U.S.C. § 254(a).
[17] Tennessee Coal, 321 U.S. at 594, 64 S.Ct. 698.
[18] Tennessee Coal, 321 U.S. at 596, 64 S.Ct. 698.
[19] Tennessee Coal, 321 U.S. at 595-96, 64 S.Ct. 698.
[20] Tennessee Coal, 321 U.S. at 599, 64 S.Ct. 698.
[21] See Jewell Ridge, 325 U.S. at 163-66, 65 S.Ct. 1063.