YU, J.
*614 ¶ 1 The Washington Minimum Wage Act (MWA), chapter 49.46 RCW, requires employers to compensate employees for their work. This case asks us to apply that general principle to the specific context of agricultural workers who are paid on a piece-rate basis for piece-rate picking work by answering the following two questions, which were certified to us by Judge Mendoza of the United States District Court for the Eastern District of Washington:
A. Does Washington law require agricultural employers to pay their pieceworkers *1208 for time spent performing activities outside of piece-rate picking work (e.g., "Piece Rate Down Time" and similar work)?
B. If the answer to the above question is "yes", how must agricultural employers calculate the rate of pay for time spent performing activities outside of piece-rate picking work (e.g., "Piece Rate Down Time" and similar work)?
Order Certifying Questions & R. to Wash. Supreme Ct. & Staying Deadlines & Proceedings, Carranza v. Dovex Fruit Co., No. 2:16-cv-00054-SMJ at 2 (E.D. Wash. Mar. 3, 2017) (Order Certifying Questions).
¶ 2 The answer to the first certified question is yes. The plain language of the MWA requires employers to pay their adult workers "at a rate of not less than [the applicable *615 minimum wage] per hour ." RCW 49.46.020(1) - (3) (emphasis added). There is no exception, other statutory provision, or judicial or executive interpretation that allows employers to evade this plain language in the context presented. Therefore, agricultural workers may be paid on a piece-rate basis only for the hours in which they are engaged in piece-rate picking work. Time spent performing activities outside the scope of piece-rate picking work must be compensated on a separate hourly basis.[1] We thus reject Dovex Fruit Company's argument that it need ensure only that each worker's average weekly compensation is equal to at least minimum wage.
¶ 3 The parties disagree about which, if any, tasks are outside the scope of piece-rate picking work. See Pls.' Opening Br. on Certified Questions at 3-4; Def. Dovex Fruit Co.'s Answering Br. at 2-3. Judge Mendoza described this category of work as "not explicitly accounted for through piece-rate compensation." Order regarding Certification Questions to Wash. Supreme Ct. at 7. We recognize that what is accounted for by the piece rate is a factual dispute beyond the scope of *616 the certified question presented. Discovery is ongoing, and we defer resolution of the question to the district court.
¶ 4 We answer the second certified question consistent with the parties' position. The rate of pay for time spent performing activities outside of piece-rate picking work must be calculated at the applicable minimum wage or the agreed rate, whichever is greater.[2]
BACKGROUND
¶ 5 This case began in 2016 when the two named plaintiffs filed this putative class action lawsuit against Dovex on behalf of Dovex's seasonal and migrant agricultural employees. Each summer, Dovex employs hundreds of seasonal and migrant workers, many of whom speak limited English, to *1209 harvest apples, pears, and cherries in Dovex's orchards. The plaintiffs allege that Dovex violated state and federal law by willfully refusing to pay wages and failing to "pay minimum wage, provide paid rest breaks, maintain accurate and adequate time and wage records, pay wages when due, [and] provide accurate statements of hours worked." Order Certifying Questions at 1.
¶ 6 The only claim relevant to the certified questions presented here relates to agricultural workers who are paid on a piece-rate basis, which is a specified amount of money per bin of picked apples or pears, or per "lug" of picked cherries. Pls.' Opening Br. on Certified Questions at 3. Such workers' rate of pay is based on how many pieces of fruit are actually picked during a pay period.
¶ 7 The plaintiffs allege that Washington law requires Dovex to compensate them separately and in addition to the *617 agreed upon piece rate for the time they spend on tasks outside of piece-rate picking. They agree that the piece rate compensates them for some tasks that are not strictly picking fruit, including going up and down ladders, moving between trees, and emptying fruit bins. Pls.' Reply Br. on Certified Questions at 2. However, they argue they have a right to separate payment for time spent on other tasks such as transporting ladders to and from the company trailer, traveling between orchards and orchard blocks, attending mandatory meetings or trainings, and storing equipment and materials. Pls.' Opening Br. on Certified Questions at 3.
¶ 8 Dovex responds that the plaintiffs are already fully compensated by the piece rate because all of the tasks they perform are part of piece-rate picking work. Def. Dovex Fruit Co.'s Answering Br. at 14. Although Dovex admits that it now pays its employees additional compensation for time spent on some nonpicking activities, it is undisputed that during the relevant time period Dovex did not. Stipulation of Facts for Questions Certified to Wash. Supreme Ct., Carranza v. Dovex Fruit Co., No. 2:16-cv-00054-SMJ at 3, 4 (E.D. Wash. Feb. 10, 2017).
¶ 9 The certified questions present a narrow issue that limit our conclusion to the context of agricultural workers.[3] We must decide whether the pay structure used by Dovex is prohibited by the MWA and, if so, the rate of pay at which the workers' time spent on tasks outside of piece-rate picking work must be compensated. We are not asked to decide which, if any, tasks are outside of piece-rate picking work in this case, and we do not attempt to do so. The scope of piece-rate picking is a question of fact, not law, and is therefore appropriately left to the district court.
*618 ISSUES
1. "Does Washington law require agricultural employers to pay their pieceworkers for time spent performing activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)?" Order Certifying Questions at 2.
2. "If the answer to the above question is 'yes', how must agricultural employers calculate the rate of pay for time spent performing activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)?" Id.
ANALYSIS
First Certified Question
¶ 10 The MWA "establish[es] minimum standards of employment within the state of Washington," including setting the minimum wage. RCW 49.46.005(1). Thirty years after its enactment, the MWA was expanded to apply to agricultural workers by the will of the people pursuant to their initiative power.[4]
*1210 LAWS OF 1959, ch. 294, § 1(5)(a); LAWS OF 1989, ch. 1, § 1(5)(a).
¶ 11 The MWA states that "every employer shall pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than [the applicable minimum wage] per hour. " RCW 49.46.020(1) - (3) (emphasis added). The central issue here is our interpretation of the phrase "at a rate of not less than [the applicable minimum wage] per hour" and its narrow application to agricultural workers who are paid on a piece-rate basis.
¶ 12 The parties correctly agree that the MWA requires payment of at least minimum wage for all hours worked *619 and that the time Dovex's employees spend on the tasks allegedly outside of piece-rate picking work are hours worked. But, as reflected in the certified questions, they dispute what an employer must do to comply with its duty to pay its workers at least minimum wage per hour.
¶ 13 The plaintiffs contend that the MWA requires compensation for each hour actually worked, such that time spent on activities outside of piece-rate picking work must be compensated on a separate hourly basis. Dovex, meanwhile, contends that its duty is limited to ensuring that when a worker's total weekly compensation is averaged across all hours worked on all tasks in a week, the resulting average hourly rate is at least equal to minimum wage. Dovex's approach is referred to as "workweek averaging."
¶ 14 As always in cases of statutory interpretation, we look first to the plain language of the statute to discern the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). In this case, the MWA's plain language unambiguously supports the plaintiffs' view. The statute does not restrict employers to a specific compensation structure, but it does require an employer to pay its employees at least minimum wage "per hour." RCW 49.46.020(1) - (3). The legislature's choice of the words "per hour" evinces an intent to create a right to compensation for each individual hour worked, not merely a right to workweek averaging.
¶ 15 This conclusion is well illustrated by a comparison of the plain language of the MWA and the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 - 219, on which the MWA is largely based. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wash.2d 851, 868, 281 P.3d 289 (2012). The FLSA provides that "[e]very employer shall pay to each of his employees ... in any workweek ... wages at" not less than minimum wage. 29 U.S.C. § 206(a) (emphasis added). Some federal courts have held that this provision allows workweek averaging. See, e.g., Douglas v. Xerox Bus. Servs., LLC, 875 F.3d 884 (9th Cir. 2017) ;
*620 Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986) ; Dove v. Coupe, 759 F.2d 167, 172 (D.C. Cir. 1985) ; United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960). These holdings cannot apply to the MWA because our legislation states "per hour," rather than "in any workweek."[5] Therefore, the MWA's plain language requires us to conclude that employees have a per hour right to minimum wage.
¶ 16 In addition to the statute itself, analogous case law further supports the plaintiffs' view. We agree with Dovex that our decision in Lopez Demetrio v. Sakuma Bros. Farms , 183 Wash.2d 649, 355 P.3d 258 (2015), did not directly address the specific issue of whether and how workers paid on a piece-rate basis should be paid for time spent on activities outside of piece-rate picking work. Def. Dovex Fruit Co.'s Answering Br. at 8-13. However, precedent from comparable situations has established that pursuant to "the MWA, employees are entitled to compensation for regular hours worked ." Stevens v. Brink's Home Sec., Inc., 162 Wash.2d 42, 47, 169 P.3d 473 (2007) (emphasis added).
*1211 Without an applicable exception, time spent on job duties that are not otherwise compensated must be compensated on a per hour basis. These principles apply here.
¶ 17 For instance, similar to the plaintiffs' claim in this case that they are not paid for time spent traveling between orchards, the plaintiffs in Stevens were technicians who were not compensated "for time they spent driving company trucks from their homes to the first jobsite and back from the last jobsite." Id. at 44, 169 P.3d 473. We concluded that this time must *621 be compensated as hours worked in accordance with the MWA. Id. at 49-50, 169 P.3d 473.
¶ 18 Also similar to the plaintiffs' claim in this case that they are not paid for time spent at mandatory meetings and trainings is the claim of the plaintiffs in Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co. , that they were required to attend "a 'pre-employment orientation' session" without compensation. 139 Wash.2d 824, 827, 991 P.2d 1126, 1 P.3d 578 (2000) (SPEEA ). We accepted "Boeing's concession that its mandatory pre-employment orientation sessions constituted work" and focused principally on "the remedy available under Washington law" because the workers were entitled to compensation. Id. at 829.
¶ 19 The Ninth Circuit has similarly concluded that the MWA provides a per hour right to minimum wage. In Alvarez v. IBP, Inc., hourly workers at IBP Inc.'s city of Pasco meat processing plant sought compensation for the time it took to perform tasks, including "gather[ing] their assigned equipment, don[ning] that equipment in one of the Pasco plant's four locker rooms, and prepar[ing] work-related tools before venturing to the slaughter or processing floors," and then repeating the process in reverse at the end of the workday. 339 F.3d 894, 898 (9th Cir. 2003). The court compared the MWA and the FLSA and considered this court's case law as well as the Department of Labor and Industries' (DLI) interpretations and regulations. Id. at 912-13. It specifically rejected using workweek averaging to measure compliance with the MWA and instead held that the workers' time was compensable because the MWA provides a per hour right to compensation for hourly employees.[6] Id. at 913.
*622 ¶ 20 Dovex nevertheless argues that its pay structure is permissible because each week, a worker's total piece-rate compensation divided by his or her total hours worked equals at least the applicable minimum wage. Def. Dovex Fruit Co.'s Answering Br. at 21-41. This argument misses the point. As we noted in Lopez Demetrio, a case that considered an analogous piece-rate compensation structure, " '[I]f the picker is not picking ..., the picker is not earning money.' " 183 Wash.2d at 653, 355 P.3d 258 (alterations in original). Workweek averaging ignores the per hour right to compensation that the MWA imposes by making it possible to conceal the fact that an employer is not compensating its employees for all hours worked because payment for some hours of piece-rate picking work is spread across all hours worked. This interpretation places few limitations on an employer. Despite protestations from the dissent, nothing would prevent an employer from ordering its workers to clean the toilets without further pay after completing their piece-rate picking work for the day. Dissent (Stephens, J.) at 1215. However, no applicable interpretive case law or regulations justify allowing workweek averaging in this context.
¶ 21 To support its right to structure a flexible compensation system, Dovex looks to Inniss v. Tandy Corp., 141 Wash.2d 517, 531, 7 P.3d 807 (2000). Def. Dovex Fruit Co.'s Answering Br. at 17-18. The general principle that flexible compensation structures are permissible is not in question. However, Inniss considered only the legality of an employer's method of calculating a specific payment structure for overtime hours pursuant *1212 to RCW 49.46.130(1). 141 Wash.2d at 523, 7 P.3d 807. It thus interpreted a different provision of the MWA that is not at issue in this case, and it did so by relying on comparable provisions and regulations of the FLSA, which are also inapplicable here. Id. at 523-29, 7 P.3d 807. And as noted above, relying on the FLSA in this case is inappropriate *623 because the MWA and FLSA provisions at issue here clearly differ in their plain language.
¶ 22 Dovex and the dissent also mischaracterize our precedent when they argue that Lopez Demetrio already endorsed using workweek averaging to measure compliance with the MWA. Def. Dovex Fruit Co.'s Answering Br. at 23, 39-41; dissent (Stephens, J.) at 1221-22. In Lopez Demetrio, we were asked the limited question of whether WAC 296-131-020(2) requires an agricultural employer to pay its workers compensated on a piece-rate basis separately for their mandatory rest breaks. 183 Wash.2d at 654, 355 P.3d 258. We answered yes and noted that workweek averaging is an acceptable method of calculating an employee's rate of pay for rest break periods. Id. at 660-61, 355 P.3d 258. However, unlike in Lopez Demetrio, this case asks us to evaluate MWA compliance in the context of hours worked, not rest breaks. It is undisputed that time spent on work outside the scope of piece-rate picking is work and, pursuant to the MWA, is hourly work. Lopez Demetrio does not undercut the MWA's plain requirement that agricultural workers are entitled to hourly compensation for hourly work.
¶ 23 Dovex and Justice Stephens' dissent further argue that their statutory interpretation is supported by administrative regulations and policies. The dissent erroneously asserts that "DLI has consistently interpreted RCW 49.46.020(1) to allow for workweek averaging to determine minimum wage compliance under piece-rate compensation plans." Dissent (Stephens, J.) at 1219. As correctly pointed out in the amicus brief of the Washington State Attorney General, DLI has not interpreted the MWA as it applies to agricultural workers paid by the piece. Amicus Br. of Att'y Gen. of Wash. at 8.
¶ 24 There is no regulation that allows workweek averaging in the context of agricultural workers paid by the piece. Instead, Dovex and Justice Stephens' dissent give great deference to DLI's interpretation of the MWA that does not apply to agricultural workers. WAC 296-126-021 *624 arguably allows workweek averaging when an employer pays its workers on a piece-rate basis. However, that regulation has no role here because agricultural workers are expressly exempt, as Dovex and the dissent admit. WAC 296-126-001(2)(c) ; Def. Dovex Fruit Co.'s Answering Br. at 37 (noting that the regulation applies "in the non-agricultural piece rate context"); dissent (Stephens, J.) at 1219 n.6. The dissent buries in a footnote its acknowledgement that agricultural workers are exempt, and then illogically concludes the court should still adhere to the interpretation. Dissent (Stephens, J.) at 1219 n.6. Agricultural workers are regulated by different regulations, chapter 296-131 WAC, which do not include any regulation allowing for compensation calculated by workweek averaging for adult agricultural workers.[7]
¶ 25 Not only is there no applicable regulation, but there also is no applicable administrative policy.[8] Dovex and the dissent attempt to rely on a nonbinding DLI policy that arguably endorses workweek averaging. Def. Dovex Fruit Co.'s Answering Br. at 36-37 (quoting Administrative Policy ES.A.3, at 2 (effective July 15, 2014) ); dissent (Stephens, J.) at 1219. But the portion of the policy relevant to workers paid by the piece purports to interpret WAC 296-126-021, which, again, expressly exempts agricultural workers. WAC 296-126-001(2)(c). Furthermore, even if it were applicable to agricultural workers paid by the piece, administrative policies "[have] no force or effect as a law or regulation. "
*1213 Stevens, 162 Wash.2d at 54, 169 P.3d 473 (Madsen, J., concurring) (emphasis added). While the level of deference owed to regulations is an issue of ongoing debate, administrative policies do not even have the force of regulations, and deference to such *625 policies is inappropriate because "[t]his court has the ultimate authority to interpret a statute." Bostain v. Food Express, Inc., 159 Wash.2d 700, 716, 153 P.3d 846 (2007).
¶ 26 Finally, " '[s]tatutes should be interpreted to further, not frustrate, their intended purpose.' " Id. at 712, 153 P.3d 846 (alteration in original) (quoting Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994) ). Remedial legislation like the MWA "is given a liberal construction" in accordance with the legislature's intent of protecting employees. Anfinson, 174 Wash.2d at 870, 281 P.3d 289. Liberally construing the MWA favors interpreting its minimum wage mandate as providing employees with a right to hourly compensation for hourly work. The dissent erroneously claims that "[t]his is not a case about unpaid workers or unpaid time" but its approach is at odds with the purpose of the MWA and is a clear admission that its interpretation favors employers over workers. Dissent (Stephens, J.) at 1220.
¶ 27 Dovex and Justice Stephens' dissent's suggested approach of using workweek averaging to measure compliance with the MWA is also inconsistent with Washington's "long and proud history of being a pioneer in the protection of employee rights." Drinkwitz, 140 Wash.2d at 300, 996 P.2d 582. It is unquestionable that no legislation has attempted to refute this history or this state's commitment to it. However, Dovex and the dissent's interpretation risks doing just that for seasonal and migrant agricultural workers, a group that is historically comprised of vulnerable workers who often face language barriers, have limited education, and endure difficult working conditions, and for whom employment protections have been hard fought. See generally Br. of Amicus Curiae Familias Unidas por la Justicia et al.; Amicus Curiae Br. of United Farm Workers of Am. & Migrant Clinicians Network.
¶ 28 In closing, we note that the dissent contends we have relied on California courts' interpretation of their state minimum wage act in order to interpret the MWA.
*626 Dissent (Stephens, J.) at 1223-26. We do not cite, rely on, or adopt California law in reaching our conclusion.
¶ 29 We therefore hold that agricultural workers who are paid on a piece-rate basis are entitled to separate hourly compensation for the time they spend performing tasks outside of piece-rate picking work. Despite the dissent's effort to paint this holding as "extend[ing] far beyond this case" and "seriously undermin[ing] the piece-rate payment system as a viable compensation plan," our decision today is limited, as it must be, to agricultural workers. Id. at 1222-23. The answer to the first certified question is yes.
Second Certified Question
¶ 30 Because we answer the first certified question in the affirmative, we must determine how an employer must calculate the rate of pay for the time its agricultural employees who are compensated on a piece-rate basis spend performing tasks outside of piece-rate picking work. We answer the second certified question consistent with the answer requested by the parties. It is undisputed that the employees are entitled to at least minimum wage because "[t]he MWA 'sets the floor below which the agreed rate cannot fall without violating the statute.' " Lopez Demetrio, 183 Wash.2d at 660, 355 P.3d 258 (quoting SPEEA, 139 Wash.2d at 835, 991 P.2d 1126). It is also undisputed that an employer can enter into a contractual agreement to pay its workers at a different rate that is above minimum wage. Therefore, an employer must pay its workers minimum wage or a contractually agreed upon rate, whichever is higher, for time spent on activities outside the scope of piece-rate picking.
CONCLUSION
¶ 31 The answer to the first certified question is yes. The MWA provides that an agricultural worker who is paid on a piece-rate basis for piece-rate picking work must be paid separate hourly compensation for the time he or she spends *627 performing tasks outside of piece-rate picking work. The answer to the second question is that the separate rate of pay must be at least minimum wage or the agreed upon rate, whichever is higher.
WE CONCUR:
Madsen, J.
Wiggins, J.
González, J.
Gordon McCloud, J.

Contrary to the dissent's assertion that we have "define[d] away the certified question" and "recast[ ] all work except piece-rate picking work as hourly work," dissent (Stephens, J.) at 1215, 1215, Judge Mendoza explained the issue as follows:
The Court is unpersuaded by Defendant's framing of the question here as a potential "double-payment" to piece-rate workers. The issue is not whether Plaintiffs seek to be paid twice for work that is allegedly already compensated through the "averaging framework." Rather, the question is how Washington law accounts for work performed by piece-rate workers that is not explicitly accounted for through piece-rate compensation (e.g., "Piece rate Down Time" and similar work). As the Lopez Demetrio [v. Sakuma Bros. Farms, 183 Wn.2d 649, 355 P.3d 258 (2015) ] court found "[t]he piece rate is the only compensation the Workers receive." Lopez Demetrio, 355 P.3d at 261. Indeed, if the worker "is not picking ..., the picker is not earning money." Id. (citing a representative for the defendant in that case). Moreover, it is not clear that the averaging framework governs in the agricultural context. Further, neither party points to authorities that definitively resolve the question of how non-piece-rate work (e.g., "Piece rate Down Time" and similar work) is or should be calculated and paid to pieceworkers. Neither has this Court been able to find such legal authority. And whether the averaging framework, or another compensation scheme, applies to these workers is a question of law for the Washington Supreme Court to consider and answer.
Order regarding Certification Questions to Wash. Supreme Ct. at 7-8 (citations and footnote omitted).

Prior to oral argument, the plaintiffs filed a motion to strike a portion of Dovex's answer to amici that addresses for the first time whether this court's decision should be applied retroactively. We passed the motion to the merits and now grant. The amici briefs do not raise retroactivity, and RAP 10.3(f) provides that an "answer to a brief of amicus curiae should be limited solely to the new matters raised in the brief of amicus curiae."

The dissent rewrites the certified question to address a much broader issue than the one before this court. The dissent frames the issue as "whether the MWA allows piece-rate pay to subsume nonproduction work time." Dissent (Stephens, J.) at 1219 n.5; see also id. at 1207-08. We do not opine on the legitimacy of a compensation structure similar to Dovex's when used outside the context of agricultural work.

While the MWA now applies to agricultural workers, they are expressly excluded from the regulation governing minimum wage compensation for other workers paid on a commission or piece-rate basis. WAC 296-126-001(2)(c), -021.

The dissent rests its analysis on the mistaken assumption that we are bound by interpretations of the FLSA. Dissent (Stephens, J.) at 1217. We are not. Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 298, 996 P.2d 582 (2000). The dissent then dismisses the importance of the phrase "in any workweek," found in the FLSA and not the MWA, but we must give effect to every word when engaging in statutory interpretation. City of Spokane v. Taxpayers of City of Spokane, 111 Wash.2d 91, 102, 758 P.2d 480 (1988). The dissent's approach amounts to a novel way of interpreting the plain language of the MWA without any citation to authority. Dissent (Stephens, J.) at 1218-19.

The dissent is mistaken when it states Alvarez supports its position that workweek averaging is permissible for workers paid by the piece because it dismisses the role of WAC 296-126-021 in the court's analysis. Dissent (Stephens, J.) at 1220-21. The Ninth Circuit noted that DLI regulations "permit use of the work-week measure only for particular employment categories." Alvarez, 339 F.3d at 912. As discussed in greater detail, infra pp. 1212-13, just as in Alvarez, there is no relevant regulation that allows for workweek averaging for agricultural workers paid by the piece.

The dissent places great emphasis on a regulation relating to minimum wage compliance for agricultural workers paid by the piece who are minors, WAC 296-131-117(1). Dissent (Stephens, J.) at 1219 n.6. The certified questions do not concern minor agricultural workers.

Dovex also claims a DLI handout is interpretative guidance in support of its position, but the handout was removed from the agency's website years ago. Dovex Fruit Co.'s Statement of Additional Auths. at 1.