# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PORT OF TACOMA, | No. 54498-9-II |
| Respondent, | |
| v. | |
| JOEL SACKS, DIRECTOR OF THE DEPARTMENT OF LABOR & INDUSTRIES, STATE OF WASHINGTON; BRUCE KOCH; DAX KOHO; GLENN JOSEPH BRAZIL; and DONALD OLSEN, | PUBLISHED OPINION |
| Appellants. | |

VELJACIC, J. — The Department of Labor and Industries (Department) issued a citation to the Port of Tacoma for wages owed. Four employees took out-of-town trips on behalf of the Port and filed wage claims with the Department, seeking compensation for an unpaid portion of travel time. Both the Office of Administrative Hearings and the Director of the Department reviewed the citation on appeal. The Director upheld the citation. The Port appealed to the superior court, arguing that the time spent traveling was not compensable under Department regulations. The superior court granted summary judgment to the Port. The Department appeals.

The Department argues that the Port employees are entitled to compensation for all "hours worked," and the travel time meets the definition of "hours worked" under WAC 296–126–002(8). The Port counters that the Department's interpretation of "hours worked" is not entitled to the deference normally accorded to agencies and should not be followed, but rather that the

employees' travel time does not meet the definition of "hours worked" under case law interpreting WAC 296–126–002(8).

We conclude that prior cases interpreting "hours worked" in the context of commute time are inapplicable to the travel time at issue here. We further conclude that the Department's interpretation of its own regulation is entitled to deference and hold that the employees' travel time is "hours worked" and is compensable. Accordingly, we reverse the superior court's order granting the Port's motion for summary judgment, reinstate the Director's order, and remand for further proceedings.

## FACTS[1]

### I. EMPLOYEES TRAVEL FOR THE PORT

The Northwest Seaport Alliance (NWSA) decided to purchase new marine cranes to employ at the Port from a manufacturer located in China. The Port is responsible for maintaining cranes operated on its premises and employs crane maintenance mechanics for that purpose. In 2017, the Port invited interested mechanics to volunteer to be part of the quality inspection team observing the manufacturing process in China. The Port intended that the mechanics observe the manufacture of components that they would later repair. The Port arranged two trips to China to observe manufacturing, and one trip to Houston to attend relevant training. The trips to China were scheduled in coordination with the manufacturer and the Port's consultants. The Port made all of the arrangements for the trips, including air transportation.

---

[1] The facts are drawn from the findings of fact contained in the Director's order, most of which were adopted from the Administrative Law Judge's (ALJ's) findings of fact. The Port does not challenge the findings of fact in the Director's order, including those adopted and incorporated in the superior court's order.

On March 25, 2017, Dax Koho and Glenn Brazil left on the first of the two trips to China. The Port instructed them to arrive at the airport three hours before their scheduled flight. During the flight, both men spent some of their time reviewing materials regarding the inspection in which they were going to participate, although the Port did not require them to do so. The rest of the time they spent on activities unrelated to work. Koho and Brazil returned to SeaTac on April 2.

In May 2017, Bruce Koch flew to and from Houston to attend training regarding the drive systems to be employed by the new cranes. He was compensated for his training time but not for his flight time.

On June 16, Koho, Brazil, Koch, and Donald Olsen left SeaTac for the second and final trip to China. The group returned to SeaTac on June 24.

The Port did not have a policy in place concerning compensation for this type of travel, so it negotiated with the workers' union to reach an agreement with the union for wages. They agreed that the hourly employees would be paid a maximum of eight hours a day, straight time, for travel to and from China and within China. The Port paid the employees for their travel time consistent with the labor agreement and with the Port's understanding of applicable federal law. As a result, the Port did not pay the employees for all of their time spent traveling.

II.     INVESTIGATION OF WAGE CLAIMS

Koho, Brazil, Koch, and Olsen each filed wage claims with the Department, seeking compensation for the time they spent traveling for the Port. That travel time included all travel to and from the airport, all time spent at the airport, and all time spent in flight. The Department's investigator consulted with a Department wage and hour technical specialist and with the Department's employment standards program manager.

The investigator first looked to the Department's definition of "hours worked" based on WAC 296-126-002(8): "all hours during which the employee is authorized or required, known or reasonably believed by the employer to be on duty on the employer's premises or at a prescribed work place." Clerk's Papers (CP) at 371. She then reviewed the Department's policy, ES.C.2, on "hours worked." Section 1 of the policy states: "The department's interpretation of 'hours worked' means all work requested, suffered, permitted or allowed and includes travel time, training and meeting time, wait time, on-call time, preparatory and concluding time, and may include meal periods." CP at 371. Section 2 of the policy relates to circumstances where an employee drives a company-provided vehicle. The introduction to section 2 states, in part:

> The purpose of this policy statement is to update section two of Labor and Industries' administrative policy ES.C.2 (section 2) pertaining to hours worked. Following the *Stevens v. Brink's Home Security*, [162 Wn.2d 42, 169 P.3d 473 (2007)] decision, Labor and Industries committed to updating this section of the policy to reflect the Supreme Court decision in the [*Stevens*] case and address ambiguity created by that case. . . . This policy is not intended to address or cover all employee travel time issues. Instead, it is limited to the particular issues raised in the [*Stevens*] case regarding whether time spent driving a company-provided vehicle between home and the first or last job site of the day constitutes compensable "hours worked."

CP at 372.

The Department investigator determined that policy ES.C.2 did not address the travel at issue with the Port employees' wage claims. At the direction of her supervisor, she reviewed the Department's Desk Aid, which provides that all travel time related to work is compensable. It reads:

> Washington law is more favorable to employees than federal law. The federal Portal to Portal Act limits compensability of out-of-town travel to travel that takes place during the employee's normal work hours. The federal law also dictates that the trip to the airport or train station is considered a normal commute and is not compensable. In Washington, all travel time related to work is compensable

4

regardless of the hours when it takes place and includes the time to get to the airport or train station.

      If a person is required to travel to a training seminar in another city, the time from when the employee leaves their home until they arrive at their hotel in the other city is all compensable. Likewise, the time from when the employee leaves the hotel (or training facility) in the remote city, until they arrive back at their home, is also compensable. If, on the other hand, the employee is required to report to work before they travel out of town, then the drive to work and home from work at the end of the travel is considered normal commute time and is not compensable.

CP at 769. The Desk Aid is not available to the public and Department investigators are not required to apply the provisions of the Desk Aid. The Department investigator recommended issuing a citation to the Port for wages owed, and the recommendation was adopted.

III.    CITATION AND APPEALS

In October 2017, the Department issued the citation and notice of assessment. A month later, the Port filed an appeal with the Office of Administrative Hearings (OAH). Both the Department and the Port filed motions for summary judgment. The Department's position before the OAH was that "the wage claimants were on duty at the employer's prescribed work place while traveling because the employer had assigned them to travel." CP at 31 (Finding of Fact (FF) 4.45). The OAH granted the Port's motion for summary judgment, denied the Department's motion, and issued an order reversing the Department's citation and notice of assessment. Shortly thereafter, the Department filed a petition for review with the Director of the Department under RCW 49.48.084 and the Washington Administrative Procedure Act (WAPA), ch. 34.05 RCW.

The Director reversed the OAH's decision. The Director noted and considered the Department's policy ES.C.2 and the Desk Aid as evidence of its "longstanding interpretation" of the "hours worked" provision. CP at 18 (conclusion of law (CL) 9). He noted that federal law also distinguishes between regular work travel and "travel for an out-of-town assignment." CP at 17 (CL 7). He concluded that the Department's interpretation was entitled to deference and did

5

not conflict with Washington case law, specifically, *Stevens*, 162 Wn.2d 42, and the case it relies on, *Anderson v. Department of Social & Health Services*, 115 Wn. App. 452, 63 P.3d 134 (2003) (holding that employee time spent commuting on a government run ferry is not "hours worked"). Specifically, he concluded that *Stevens* and *Anderson* were inapplicable because "[n]either case addresses the compensability of travel time for out-of-town work assignments." CP at 18 (CL 10).

The director further concluded:

Under WAC 296-126-002(8), "hours worked" includes travel time for out-of-town work assignments. As in federal law, travel for an out-of-town work assignment is not the same as ordinary home-to-work travel. It is performed for the employer's benefit and at its special request to meet the needs of the particular assignment. It is an integral part of the principal activity that the employee was hired to perform. This is true regardless of whether the employee engages in additional work during the journey or whether the employer owns or controls the employee's means of transport. Because the travel itself is a duty of the work assignment, so long as the employer approves the means of travel, the employee is on duty at a prescribed work place throughout the travel time.

CP at 18 (CL 12) (footnote omitted).

The Port petitioned for judicial review of the Director's order with the superior court pursuant to RCW 49.48.084(4) and ch. 34.05 RCW. The Port argued that the Director erroneously interpreted and applied the law. Specifically, the Director erred in according substantial weight to the "Desk Aid," in determining that *Anderson* and *Stevens* are inapplicable, and in determining that the travel time met the definition of "hours worked." Both parties again filed motions for summary judgment. The superior court granted the Port's motion and denied the Department's. The Department appeals.

ANALYSIS

I.    GENERAL LEGAL PRINCIPLES

Under the Minimum Wage Act (MWA), ch. 49.46 RCW, unless exempt, employees are entitled to compensation for regular hours worked and for any overtime hours worked. *See* RCW 49.46.020, .130; *Stevens*, 162 Wn.2d at 47.

If an employee files a wage complaint, the Department must investigate. RCW 49.48.083(1). If the Department determines that the employer violated one or more wage payment laws, the Department issues a citation and notice of assessment. RCW 49.48.083(2).

"Washington has a 'long and proud history of being a pioneer in the protection of employee rights.'" *Hill v. Xerox Bus. Servs., LLC*, 191 Wn.2d 751, 760, 426 P.3d 703 (2018) (internal quotation marks omitted) (quoting *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002)). The Industrial Welfare Act (IWA), ch. 49.12 RCW, and the MWA are remedial statutes protecting employees' rights. *Pellino v. Brink, Inc.*, 164 Wn. App. 668, 684, 167 P.3d 383 (2010) (IWA); *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 625, 416 P.3d 1205 (2018) (MWA). Remedial statutes, as well as the regulations promulgated thereunder, must be liberally construed in favor of the worker. *See Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 882, 154 P.3d 891 (2007). "A liberal construction should carry into effect the purpose of the statute." *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988).

II.    STANDARD OF REVIEW

The WAPA, codified at ch. 34.05 RCW, governs review of a final order by the director of a department. RCW 49.48.084(4). Relevant here, a party will be afforded relief from an adverse administrative decision when (1) the administrative decision is based on an error of law, (2) the

7

decision is not based on substantial evidence, or (3) the decision is arbitrary or capricious. RCW 34.05.570(3). In reviewing an administrative decision, we sit in the same position as the superior court, applying the WAPA standards directly to the record considered by the agency. *Kittitas County v. Kittitas County Conservation*, 176 Wn. App. 38, 47, 308 P.3d 745 (2013); *Silverstreak*, 159 Wn.2d at 879-80.

"[W]here the original administrative decision was on summary judgment, the reviewing court must overlay the [W]APA standard of review with the summary judgment standard." *Verizon Nw., Inc. v. Employment Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law. *Id*. We evaluate the facts in the administrative record de novo and the law under the "error of law" standard. *Id*. Under this standard, "this court gives a 'high level of deference to an agency's interpretation of its regulations' based on the agency's expertise and insight gained from administering the regulation." *Brady v. Autozone Stores*, *Inc.*, 188 Wn.2d 576, 581, 397 P.3d 120 (2017) (quoting *Silverstreak*, 159 Wn.2d at 885).

Deference to the Department's interpretation of its own properly promulgated regulations is appropriate "'absent a compelling indication that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority.'" *Litchfield v. KPMG, LLP*, 170 Wn. App. 431, 441, 285 P.3d 172 (2012) (internal quotation omitted) (quoting *Silverstreak*, 159 Wn.2d at 884); *see also Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 627, 444 P.3d 606 (2019). However, we are not bound by the agency's interpretation because the courts have "the ultimate authority to interpret a statute [or regulation]." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846 (2007). To interpret agency regulations, we apply the same

8

principles used to interpret statutes. *Puget Soundkeeper All. v. Pollution Control Hr'gs Bd.*, 189 Wn. App. 127, 136, 356 P.3d 753 (2015).

Generally, to be entitled to deference the agency must show it adopted its interpretation as a "matter of agency policy." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992). "While the construction does not have to be memorialized as a formal rule, it cannot merely 'bootstrap a legal argument into the place of agency interpretation,' but must prove an established practice of enforcement." *Sleasman v. City of Lacey*, 159 Wn.2d 639, 646, 151 P.3d 990 (2007) (quoting *Cowiche Canyon*, 118 Wn.2d at 815).

III.     ANALYSIS

We conclude that the travel time for out-of-town travel is "hours worked" under the regulation for three reasons. First, *Anderson* and *Stevens* are distinguishable. Second, the Department's interpretation of its own regulation is entitled to deference. Third, the Department's interpretation is consistent with the plain meaning of the regulation and the mandate that we liberally construe it in favor of the worker.

A.     Applicability of *Anderson* and *Stevens*

The legislature has not defined "hours worked," or addressed the compensability of employee travel time. The Department defines "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." WAC 296–126–002(8).[2]

---

[2] WAC 296-126-002 was promulgated pursuant to the Industrial Welfare Act but is also applicable to the MWA. *See Stevens*, 115 Wn. App. at 454.

In *Anderson*, this court addressed a claim by Department of Social and Health Services employees, who sought compensation for the time they spent riding the employer provided ferry to and from the Special Commitment Center on McNeil Island. 115 Wn. App. at 454. The ferry was the only way to reach the island. *Id*. This court determined that the claims failed because the employees were not "on duty" during the ferry rides. *Id*. at 456. This court did not define "on duty," but found it significant that during the ferry ride the workers "engage[d] in various personal activities, such as reading, conversing, knitting, playing cards, playing hand-held video games, listening to CD (compact disc) players and radios, and napping." *Id*. at 454. This court concluded that this daily commute was not "hours worked." *Id*. at 456. It also relied on a rule applicable only to state civil service employees that clearly defined when travel time was considered "hours worked."[3] *Id*. at 456-57.

Relying on this court's analysis of "on duty" in *Anderson*, the Supreme Court later addressed the definition of "hours worked" under WAC 296–126–002(8) in *Stevens*, 162 Wn.2d 42. In that case, Brink's employees sued their employer, seeking wages for the time spent driving their employer-provided trucks from home to their first work site and from their last work site to home. *Id*. at 45. The employees already received compensation for the time spent driving between work sites. *Id*.

---

[3] WAC 356-15-040 stated that travel time was considered time worked when: (1) It occurs during the employee's normal hours of work and is from one work site to another; or (2) The employee has a regularly assigned work site, and the travel is to carry out a work assignment at a different location than the regularly assigned work site, to the extent that it exceeds normal home-to-work travel time, is outside of normal working hours, and does not exceed the shortest reasonable means for the employee to reach and return from the location. We note that the regulation used the term "time worked," not "hours worked," though this is insignificant for our analysis. The regulation was also repealed on July 1, 2005. *See* WSR 05-12-066 (2005). Because WAC 356-15-040 applied only to civil service employees, and because it is no longer effective, it does not apply in this case.

The court distinguished the facts in *Anderson* but relied on its analysis to "evaluate the extent to which Brink's restricts Technicians' personal activities and controls Technicians' time." *Id*. at 48. In agreeing with the workers, the court identified factors that weighed in favor of classifying the time spent driving to the first call and driving home from the last call as time spent "on duty." *See Id*. at 48-49. First, the drivers took the trucks home with them every day and infrequently went to a Brink's office. *Id*. Second, the workers received their assignments from home and were always on call while driving. *Id*. Third, Brink's had detailed policies limiting how employees used the trucks, which included prohibitions on running personal errands in the trucks. *Id*.

The court then determined that the trucks could be classified as the "employer's premises" or "prescribed work place." *Id*. at 49. The court reasoned that driving the trucks was an integral part of the employer's business. *Id*. Workers also had to carry all necessary tools and equipment in the trucks, had to do their paperwork in the truck or at the customer's home, and formal policies required the workers to keep the trucks clean and serviced. *Id*. The court concluded that Brink's vehicles were essentially mobile offices for the employees. *Id*.

*Anderson* and *Stevens* interpret the meaning of "hours worked" within the context of a daily commute. In contrast, this case deals with out-of-town travel. Both *Anderson* and *Stevens* are inapplicable here.[4] We conclude that *Stevens* and *Anderson* do not control the analysis of "hours worked" as that term relates to out-of-town travel.

---

[4] Federal law, most state law, the Department's policy ES.C.2, and the Desk Aid distinguish between out-of-town travel, at issue here, and daily commutes, as in *Anderson* and *Stevens*.

The United States Department of Labor, Wage and Hour Division's *Fact Sheet #22: Hours Worked under the Fair Labor Standards Act (FLSA)* provides:

B.    Deference Due

The Port argues that we do not owe deference to the Department's interpretation.  The Port argues that the applicable regulations and case law provide the applicable standard, and the Department's interpretation is not entitled to deference because it comes in the form of an unpublished Desk Aid.  We disagree.

To support its argument that the Department's interpretation, specifically the Desk Aid, is not entitled to deference, the Port relies on a quote from *Carranza v. Dovex Fruit Co*., 190 Wn.2d 612, 416 P.3d 1205 (2018).

---

Travel Away from Home Community: Travel that keeps an employee away from home overnight is travel away from home.  Travel away from home is clearly work time when it cuts across the employee's workday.  The time is not only hours worked on regular working days during normal working hours but also during corresponding hours on nonworking days.  As an enforcement policy the Division will not consider as work time that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

U.S. DEP'T OF LABOR, *Fact Sheet #22: Hours Worked under the Fair Labor Standards Act (FSLA)* at 2 https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs22.pdf.

The Oregon Revised Statute (ORS) 839-020-0045(5) defines "[t]ravel away from home community" and thereby acknowledges differing treatment from ordinary travel as part of a daily commute.

The Connecticut General Statutes Annotated  (CGSA) 31-60-10 provides:

'travel time' means that time during which a worker is required or permitted to travel for purposes incidental to the performance of his employment but does not include time spent in traveling from home to his usual place of employment or return to home, except as hereinafter provided in this regulation.   (b)  When  an employee, in the course of his employment, *is required or permitted to travel for purposes which inure to the benefit of the employer, such travel time shall be considered to be working time and shall be paid for as such*.

(Emphasis added.)

In *Carranza*, the court interpreted the MWA's provision requiring employers to pay their employees at least minimum wage per hour worked. *Id*. at 619. At issue was interpretation of the phrase "'at a rate of not less than [the applicable minimum wage] per hour,'" *Id*. at 614-15 (quoting RCW 49.46.020(1)-(3)), and whether it required Dovex to compensate non-picking work on an hourly basis when done by fruit pickers who are paid on a piece-rate basis. *Id*. at 618-20. Dovex argued in part that administrative regulations and policies supported an interpretation that allowed a pay structure where each week a worker's total piece-rate compensation divided by their total hours worked equaled at least the applicable minimum wage. *Id*. at 623. The court rejected this argument because the Department policy cited by Dovex interpreted a regulation that specifically did not apply to agricultural workers. *Id*. at 624.

The court continued: "even if it were applicable to agricultural workers paid by the piece, administrative policies '[have] no force or effect as a law or regulation.'" *Id*. at 624 (quoting *Stevens*, 162 Wn.2d at 54 (Madsen, J., concurring)). The court concluded that "[w]hile the level of deference owed to regulations is an issue of ongoing debate, administrative policies do not even have the force of regulations, and deference to such policies is inappropriate because '[t]his court has the ultimate authority to interpret a statute.'" *Id*. at 624-25 (quoting *Bostain*, 159 Wn.2d at 716).

The Port appears to argue that in *Carranza*, the Supreme Court determined that courts should not give deference to the agency's interpretation that comes in the form of unpublished policies. Therefore, it argues, we should not defer to the Department's interpretation enumerated in its unpublished Desk Aid.

*Carranza* is distinguishable. In interpreting a statute, the court rejected an employer's reliance on an agency policy primarily because that policy interpreted a regulation that expressly

did not apply to the workers at issue in the case. Here, the Department is asking us to defer to its interpretation and application of "hours worked" under WAC 296–126–002(8), which clearly applies to the workers at issue. Furthermore, nothing in *Carranza* indicates the Supreme Court's intention to no longer defer to any agency's interpretation of its own regulation. In fact, recently the Supreme Court again stated that it "accords substantial weight to an agency's interpretation within its area of expertise and upholds that interpretation if it reflects a plausible construction of the regulation and is not contrary to legislative intent." *State v. Numrich*, 197 Wn.2d 1, 18-19, 480 P.3d 376 (2021).

We therefore accord deference to the Department's interpretation if it reflects a plausible construction and is not contrary to legislative intent. *Id*.

Additionally, the Department's policy is not a recent development and appears to apply here. Although it does not specifically discuss a special out-of-town work assignment, the Department's policy ES.C.2 defines "hours worked" as "all work requested, suffered, permitted or allowed and *includes travel time*, training and meeting time, wait time, on-call time, preparatory and concluding time, and may include meal periods." CP at 371 (emphasis added). More importantly, section 2 recognizes the limited application of the *Stevens* opinion, stating: "This policy is not intended to address or cover all employee travel time issues. Instead, it is limited to the particular issues raised in the [*Stevens*'s] case regarding whether time spent driving a company provided vehicle between home and the first or last job site of the day constitutes compensable 'hours worked.'" CP at 372. This indicates, independently of the unpublished Desk Aid, that it has been the Department's policy to treat the commute travel time at issue in *Stevens* differently than other types of travel time. This is not a case of "bootstrap[ping] a legal argument into the place of agency interpretation." *Cowiche Canyon*, 118 Wn.2d at 815.

14

In light of the Department's longstanding policy of treating travel time as compensable "hours worked" under WAC 296-126-002(8) and ES.C.2, this is clearly not a case of bootstrapping; the Port's argument to deter us from affording deference to the Department's interpretation fails.

C.    Plain Meaning and State Policy Protecting Employees

The Department argues that the MWA requires an employer to compensate travel on out-of-town assignments because unlike a commute, the travel itself is a duty of the work assignment performed at an employer-approved location. The Department asserts that the employees were on duty at a prescribed workplace because the travel was necessary to facilitate inspection, and planes and cars are Port-approved instrumentalities of travel.

Again, WAC 296-126-002(8) defines "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." Neither party disputes that the disputed hours were "authorized or required" by the Port, thereby establishing the first factor required by WAC 296-126-002(8). At issue is whether the Port employees were both on duty and at a prescribed workplace, as further required by WAC 296-126-002(8).

> 1.    The Department's interpretation of WAC 296-126-002(8) is consistent with the plain meaning of the regulation.

In determining the ordinary meaning of an undefined statutory term, we may look to the dictionary definition. *Lockner v. Pierce County*, 190 Wn.2d 526, 537, 415 P.3d 246 (2018); *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). "On duty" is defined as "assigned to a task or duty [or] engaged in or responsible for some specific performance." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 705 (3d ed. 1961). The travel is at the behest and

15

for the benefit of the employer and is a necessary part of the assigned task. The time spent traveling is time that employees would otherwise have been engaged in their own non-work activities.

Here, the Port's employees were, in fact, on duty. They engaged in an assigned task—the travel—at the behest of their employer, in order to effectuate their assigned duty to inspect the crane manufacturing process.

"Prescribed" is defined as "dictate[d] or direct[ed]." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1792 (3d ed. 1961). The instrumentality of travel is the place dictated by the employer where the assigned task or duty occurs. Here, the Port approved the means of travel and purchased the plane tickets, thereby dictating, i.e. prescribing, the workplace.

The Department's interpretation of out-of-town travel as "on duty at a prescribed work place," CP at 18 (CL 12), is thus consistent with the plain meaning of the regulation.

> 2. The Department's interpretation is consistent with longstanding policy of protecting employees.

The Department also argues that the interpretation advocated by the Port is contrary to Washington's policy to protect employees. We agree.

We must "give great deference to an agency's interpretation of its own properly promulgated regulations, 'absent a compelling indication' that the agency's regulatory interpretation conflicts with legislative intent." *Silverstreak*, 159 Wn.2d at 884–85 (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 111, 922 P.2d 43 (1996)).

Here, the Department's interpretation is not only consistent with the plain meaning of the regulation, but it is also consistent with the directive that this court liberally construe a regulation promulgated under remedial statutes, the IWA and MWA, in favor of the beneficiaries of those acts. The interpretation is thus in line with Washington's "'long and proud history of being a pioneer in the protection of employee rights.'" *Xerox Bus. Servs., LLC*, 191 Wn.2d at 760 (internal

16

quotation marks omitted) (quoting *Int'l Ass'n of Fire Fighters, Local 46*, 146 Wn.2d at 35). The interpretation proffered by the Port is, in fact, contrary to a liberal interpretation because absent the union agreement, and under the Port's reading of the regulation, the employees would not be compensated for any of the time spent traveling.

We conclude that the Director's order did not erroneously interpret or apply the law and was not arbitrary and capricious. Therefore, we reverse the superior court's grant of summary judgment to the Port.

III.    FACTUAL BASIS FOR WAGE CALCULATIONS

In a footnote, the Department appears to argue that the Port cannot challenge the factual basis for the Director's wage calculations because the Port failed to preserve the issue. The Port responds that it properly preserved the factual dispute regarding the wage calculations pending final determination of the compensability of the worker's travel time.

The factual basis for and validity of the Director's wage calculations are not before us on appeal. The issue of calculations was not addressed by the superior court, and the Port stated at oral argument before us that the calculations were not at issue on appeal. Wash. Court of Appeals, *Port of Tacoma v. Joel Sacks, Dep't of Labor & Indus.*, No. 54498-9-II (May 14, 2021), at 19 min., 47 sec. through 20 min., 53 sec. (on file with court). Accordingly, we decline to reach this argument. RAP 10.3(g).

However, on remand, the Port is permitted to contest the factual basis and validity of the wage calculations in the Director's order. RCW 34.05.554(1) provides that issues that were not raised before the administrative agency cannot be raised on appeal. But the Port did raise the issue of wage calculations during the administrative review process. And in its petition for judicial review, the Port requested the superior court to "dismiss the wage claims in their entirety" or

"[g]rant such other relief as the Court deems just and equitable."  CP at 11.  Based on this record, the issue of wage calculation was properly preserved.

Accordingly, we reverse the superior court's order granting the Port's motion for summary judgment, reinstate the Director's order, and remand for further proceedings.  On remand, the Port is permitted to contest the factual basis and validity of the wage calculations.

Veljacic, J.

We concur:

Sutton, J.

Glasgow, A.C.J.